UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JEFF CHARLES LEPHANIE,
REG. #02993-104                                                                        PLAINTIFF

V.                              2:17CV00046 BRW/JTR

UNITED STATES OF AMERICA, et al.                                           DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

1

## I. Introduction

Plaintiff Jeff Charles Lephanie ("Lephanie") is a federal prisoner in West Virginia. He has filed this *pro se* action alleging that, while he was a federal prisoner in Arkansas, Defendants violated his constitutional rights, as protected by *Bivens,* and the Federal Tort Claims Act ("FTCA").[1] *Docs. 1 & 6.* Before Lephanie may proceed with this action, the Court must screen his claims.[2]

## II. Discussion

Lephanie alleges that, on January 20, 2016, at 5:00 p.m., he and three other prisoners were ordered to leave the prison library because it was closing. As they were returning to their unit, Officer Mulholland ("Mulholland") and unknown federal correctional officers ("Does") ordered all four prisoners to sit outside on a metal bench until it was their turn to go to the chow hall. Lephanie alleges that it

---

[1] *In Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Court held that plaintiffs have an implied right of action to bring certain constitutional claims against federal actors. The FTCA waives sovereign immunity and allows plaintiffs to hold the United States of America vicariously liable for torts committed by federal employees in the scope of their employment. *See* 28 U.S.C. § 1346.

[2] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

was "twenty degrees" outside.[3] While sitting outside, Lephanie was wearing the "regular institutional khaki uniform (pants and shirt), along with an institutional jacket." *Doc. 6 at 1.* Lephanie, who is from Haiti, asked Mulholland for permission to go inside because he was not accustomed to cold weather. Mulholland allegedly told Lephanie to "do what I say or I'll put your monkey ass in the SHU for a very long time." *Doc. 1 at 2.* Lephanie claims that he remained outside on the bench for 1 hour and 25 minutes before he was escorted back to his Unit at 6:25 p.m.[4]

Lephaine claims that sitting outside caused him to develop "ear aches," "a runny nose," "sneezing," and other unspecified "respiratory ailments." *Doc. 6 at 2.* Lephaine also "believes" that he sought treatment in the prison infirmary for "respiratory ailments," but he has not specified what, if any, medical treatment he received. *Id.*

---

[3]In fact, on January 20, 2016, the temperature was thirty degrees from 5:00 to 7:00 p.m.. There was no precipitation and the wind speed was seven mph. *See Wundermap,* www.wundergound.com*; see also* Fed. R. Evid. 201(b) (providing that a court may take judicial notice of a fact that can be "readily determined from sources whose accuracy cannot reasonably be questioned").

[4]On page 4 of the Complaint, Lephanie says that he was outside "1 hour and 25 minutes." *Doc. 1.* However, on page 2 of the Complaint, Lephanie alleges that sometime between 5:00 p.m. and 6:25 p.m., he was allowed to go inside to eat dinner. *Id.* This suggests that Lephanie was outside *less* that one hour and twenty five minutes and that he was able to warm his body for an unspecified amount of time while he was inside eating dinner. Nevertheless, the Court will accept, as true, Lephanie's assertion that he was outside for 1 hour and 25 minutes in 30 degree weather.

A. **Eighth Amendment Claim**

Lephanie alleges that Mulholland and Does subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, when they forced him to sit outside in thirty degree weather for 1 hour and 25 minutes.

The "Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). Thus, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Here, Lephanie *admits* that he: (1) was wearing a jacket and uniform; (2) was allowed to go inside to eat dinner and warm himself for a substantial period of the 1 hour and 25 minutes he claims he was "outside"; and (3) suffered cold symptoms, which he believes were caused by sitting outside for 1 hour and 25 minutes in 30 degree weather, wearing his uniform and a jacket. *See Whitnack v. Douglas Cnty.,* 16 F.3d 954, 958 (8th Cir. 1994) (explaining that conditions of confinement may "be tolerable for a few days and intolerably cruel for weeks or months," and that "the length of time required before a constitutional violation is made out decreases" as the severity of the conditions increases"). Finally, based on the allegations in his Complaint and Amended Complaint, Lephanie was subjected to this treatment on only one occasion, which makes it an isolated incident, *not* a re-occurring practice.

Viewing these facts in a light most favorable to Lephanie, he may have been "uncomfortable" while he waited, *in warm clothes,* for 1 hour and 25 minutes in 30 degree weather. However, nothing about those facts suggests that he had to endure an "extreme deprivation" that denied him the "minimal civilized measures of life's necessities" such that it would suggest an Eighth Amendment violation. *See Martin v. Shelton*, 319 F.3d 1048, 1051 (8th Cir. 2003) (finding no constitutional violation when a prisoner was required to work in thirty degree weather without warm clothing); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (finding no constitutional violation when a prisoner did not "show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter"). Thus, the Court recommends that Lephanie's Eighth Amendment claim be dismissed, without prejudice.

**B.    Fifth Amendment Claim**

Lephanie, who is African-American, alleges that Mulholland, who is Caucasian, violated the Fifth Amendment prohibition against racially discriminated by threatening to put his "monkey ass in the SHU."[5]

"Verbal abuse by correctional officials, even the use of reprehensible racially

---

[5] The Equal Protection Clause in the Fourteenth Amendment applies to state actors. However, Courts have held that the Due Process Clause in the Fifth Amendment includes an implied protection from racial discrimination by federal actors. *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954); *Johnson v. Alexander,* 572 F.2d 1219, 1220 (8th Cir. 1978).

5

derogatory language, is not by itself unconstitutional race discrimination unless it is pervasive or severe enough to amount to racial harassment." *Lewis v. Jacks,* 486 F.3d 1025, 1028 (8th Cir. 2007); *see also Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002). The allegations in the Complaint and Amended Complaint describe only a single isolated incident of Mulholland directing a racial epithet toward Lephanie.

Additionally, to state a viable racial discrimination claim, Lephanie must plead facts suggesting that Mulholland and Does intentionally treated him differently than similarly situated prisoners due to his race. *Lewis,* 486 F.3d at 1028; *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008). In his Amended Complaint, Lephanie *speculates* that he does not believe Mulholland would have ordered Caucasian prisoners to sit outside in the cold weather. *Id.* Lephanie cannot premise a racial discrimination claim on his mere speculation about whether Mulholland would have treated Caucasian prisoners differently. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (explaining that, to state a viable claim for relief, the "factual allegations must be enough to raise a right to relief above the speculative level"). Thus, the Court recommends that Lephanie's Fifth Amendment racial discrimination claim be dismissed, without prejudice.

**C.     FTCA Claim**

Lephanie alleges that Defendant United States of America is vicariously liable for Mulholland's and Does's negligent decision to have him sit outside in thirty

degree weather for 1 hour and 25 minutes.

FTCA claims are governed by the substantive law of the state where the allegedly tortuous act occurred, which in this case is Arkansas. *See* 28 U.S.C. § 1346(b); *Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008). To state a viable negligence claim under Arkansas law, Lephanie must plead facts suggesting that: (1) Mulholland and Does owed him a duty of care; (2) Mulholland and Does breached that duty of care; and (3) their breach was proximate cause of his injuries. *Robinson Nursing & Rehab. Ctr. v. Phillips,* 519 S.W.3d 291, 302 (Ark. 2017); *Fordyce Bank & Trust Co. v. Bean Timberland, Inc.*, 251 S.W.3d 267, 270-71 (Ark. 2007). As to the third element, proximate cause is defined as "a cause, which, in a natural and continuous sequence, produces damages and without which the damage would not have occurred." *Mangrum v. Pigue*, 198 S.W.3d 496, 501 (Ark. 2004); *Gilbow v. Crawford*, 458 S.W.3d 750 (Ark. App. 2015).

Lephanie does *not* allege that he contracted hypothermia or frostbite, which are the natural and foreseeable consequences of exposure to freezing temperatures, *without proper clothing,* for a sufficiently long interval of time. Here, Lephanie admits he was wearing warm clothes and exposed to 30 degree temperatures for less than 1 and ½ hours. Furthermore, Lephanie's only alleged injury is his own subjective belief that his subsequent "runny nose" and other cold symptoms were caused by being forced to sit outside in 30 degree weather. It is well understood in

7

medical literature that colds are caused by exposure to cold viruses, *not being forced to sit outside in cold weather while wearing warm clothes.*[6]

Because Lephanie has not pled any facts suggesting that sitting outside in 30 degree weather was the proximate cause of his alleged cold symptoms, he has failed to plead a viable negligence claim under Arkansas law. Thus, the Court recommends that his FTCA claim be dismissed, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Lephanie's Complaint and Amended Complaint be DISMISED, WITHOUT PREJUDICE, for failing to state a claim upon which relief may be granted.

2. Dismissal constitute a "STRIKE," as defined by 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

Dated this 9th day of August, 2017.

*/s/ J. Thomas Ray*
_____
UNITED STATES MAGISTRATE JUDGE

---

[6] *See* Mayo Clinic, "Overview of the Common Cold," www.mayclinic.org/diseases-conditions/common-cold/symptoms-cases/dxc-20199808.